SUMMERS, Justice.
United Parcel Service, Inc., applied to the Public Service Commission for a certificate of public convenience and necessity authorizing United to operate as a common carrier motor freight service, transporting packages and articles, except those of unusual value, throughout the State of Louisiana, subject to the following restrictions:
(1) No service shall be rendered in the transportation of any package or article weighing more than 50 pounds or exceeding 108 inches in length and girth combined, and each package or article shall be considered as a separate and distinct shipment.
(2) No service shall be provided in the transportation of packages or articles weighing in the aggregate more than 100 pounds from one consignor at one location to one consignee at one location on any day.
(3) No service shall be rendered between department stores, specialty shops and retail stores and the branches or warehouses of such stores; or between department stores, specialty shops, and retail stores or the branches or warehouses thereof, on the one hand, and, on the other, the premises of the customers of such stores.
James E. Casey, then 19 years of age, started the United business in Seattle, Washington, in 1907. It began with several boys working as messengers delivering messages and packages on foot and by bicycle. The business now operates in 35 states and in parts of 9 others, plus the District of Columbia. The business is presently geared as a substitute for and as an improvement over parcel post. It presently operates interstate in Louisiana under appropriate regulations.
The basic delivery vehicle used by United in its operations is a specially constructed panel delivery car built to the design and specifications of United’s engineers and having a body capacity of approximately 380 cubic feet.
This basic vehicle is supplemented by smaller cars, ranging in the area of 250 to 300 cubic feet but of similar construction, and also by some still smaller, so-called compact type vehicles. In addition, there are larger vehicles, in the range of 600 to 800 cubic feet and of a construction similar to the basic vehicles. Finally, in transferring packages between operating areas, applicants also use specially-designed vans and tractor-trailer equipment.
Special features of service offered by United involve pickups inside the shippers’ premises; automatic daily pickup calls; deliveries inside the consignee’s premises; deliveries of packages on the next business day after pickup; simplified C.O.D. whereby consignees may pay with personal checks unless the shipper desires otherwise; simplified documentation, keeping shippers’ records to a minimum; automatic insurance coverage up to $100 per package with additional insurance available for an extra charge; return of undeliverable or *307 refused packages to the shipper automatically, without delay and without extra charge; three separate attempts to deliver; retrieval of packages and return to shipper; tracing procedure permitting rapid response to inquiries about shipments; special vehicles and facilities for fragile merchandise; neat, uniform appearance of drivers and vehicles; and cost to shipper comparable to uninsured parcel post.
Transway, Inc., is a common carrier by motor vehicle engaged in the transportation of commodities and materials both in interstate and intrastate commerce in the State of Louisiana. Transway operates within Louisiana in intrastate commerce under the authority of four certificates of public convenience and necessity as a common carrier of a long list of special commodities over irregular routes. It opposes the issuance of the certificate to United.
Hearings were held on the application before the Commission on May 31, June 1 and September 7, 1971. At these hearings Transway moved to dismiss the application of United, alleging that the certificate applied for is not authorized by Section 162 of Title 45 of the Revised Statutes in that it seeks authority for general commodities to be transported over irregular routes, a class not recognized by law. Alternatively, Transway contended that the public convenience and necessity would not be materially promoted by permitting United to transport the special commodities Transway was authorized to transport.
A number of certificated carriers appeared and protested granting of the certificate. Eventually they withdrew their opposition, leaving Transway as the sole opponent.
Following the hearings, the Commission issued its order granting United the operating rights and authority applied for. Transway’s application for rehearing was then denied. The Commission certificate issued to United authorized operation in Louisiana intrastate commerce “as a Common Carrier by Motor Over Irregular Routes” under the conditions set forth in the application filed by United.
Thereafter, pursuant to Article VI, Section 5, of the Constitution and Sections 1192-1195 of Title 45 of the Revised Statutes, Transway appealed to the Nineteenth Judicial District Court to set aside the Commission order as unlawful, null and void. Alternatively, Transway prayed that the Commission order be set aside as null and void insofar as it authorizes transportation of commodities Transway was authorized to transport under its certificates. United and the Commission answered the appeal in support of the Commission order.
On November 6, 1973 judgment was rendered in the trial court confirming the order of the Cpmmission and dismissing Transway’s appeal. Transway appealed devolutively to this Court.
Transway has abandoned its contention that the public convenience and necessity would not be served by permitting United to operate as the Commission order prescribes ; and properly so, for the record is replete with evidence not only of the need for United’s service, but also of the saving it will effect both in time and money for shippers and consignees.
Transway does adhere, however, to its contention that the Commission was not authorized by Section 162 of Title 45 of the Revised Statutes, or otherwise, to issue a certificate to United to transport general commodities over irregular routes. To support this argument Transway relies upon Section 162(4), particularly that portion which prescribes:
“There shall be two main classes of common carriers, ‘common carriers of commodities over regular routes,’ and ‘common carriers of special commodities over irregular routes.’ ‘Common carriers of special commodities over irregular routes’ means any person, as a common carrier, transporting commodities which require special equipment, service or handling over irregular routes and not between fixed termini.”
*308 Transway’s contention, stated succinctly, is that the statutory authority of the Commission, relating to common carriers by motor vehicle, limits the Commission to authorizing either “common carriers of commodities over regular routes” or “common carriers of special commodities over irregular routes.” The mandatory language of the statute is that “there shall be two main classes” of common carriers, no more. The certificate issued by the Commission to United, it contends, creates a third class —“common carrier by motor of general commodities over irregular routes.” To qualify under the statute to transport over irregular routes, it is argued, only “special commodities” may be transported and they must be specifically named in the certificate. The argument concedes that there may exist sub-classes within the two main classes, but asserts the Commission cannot create or authorize a third class, as it has in the case at bar when it authorized a “common carrier by motor of general commodities over irregular routes.”
Transway asserts that the action of the Commission in granting the United application is not only contrary to Section 162, but that it is also contrary to contemporary construction the Commission has adopted in its regulatory policies. Pamphlets are referred to and quotations therefrom would support Transway’s position.[1] Indeed, the publications caution the carrier over irregular routes from applying “ . . . for so many varied commodities that the granting of his application would enable him to invade the legitimate field of the regular-route general commodity common carrier.”
If this prior expression of the Commission represented its view of the statute’s meaning at one time, the Commission’s action here is at variance with these pamphlets. The inference is that time and the circumstances of this case warrant the change in the Commission’s view of the statute’s meaning.
It is true that the certificate issued to United does not contain explicit commodity restriction other than restrictions against commodities of unusual value. However, the certificate was granted upon the condition that there would be restrictions against: articles weighing more than fifty pounds; articles of greater size than 108 inches in length and girth; shipping more than 100 pounds in one day from a single consignor to single consignee; and shipments from warehouse to retail stores or customer’s premises. As a practical matter these restrictions, together with the special service and handling United agreed to furnish, definitely limit the number and type of commodities United can transport. In short, the commodities are in fact required to be “special” both in character, size, weight and treatment. Pertinently, the statute defines special commodities as ■those “which require special equipment, service or handling over irregular routes.” La.R.S. 45:162(4). United’s operation fulfills these requirements.
Absence from the certificate of the words “special commodities” or the absence of a listing of special commodities may be incompatible with a narrow view of the literal terms of the statute, but this does not mean that special commodities will not be transported. The special character of the commodities authorized to be transported results from the numerous and varied restrictions imposed by the authorization.
Coincidentally, the latest certificate issued to Transway authorized the transportation over irregular routes of “general commodities having an immediate prior or *309 subsequent movement by air, except: livestock, etc.” Although Trans-way is a carrier of special commodities, the quoted authority of its latest certificate does not list commodities. Instead, the special character of the commodities is found in the manner in which they were handled before being transported by Trans-way — that is, “movement by air.”
In its brief, the Commission informs the Court that, in general an irregular route common carrier of “special commodities” is one performing a type of service not usually made available by a regular route common carrier due to the type of service, equipment, or handling required. (La.R.S. 45:162). The accepted emphasis has principally been placed upon the peculiarity of the type service, equipment and handling required rather than the “commodity” itself; that is, a shipment requiring special handling, equipment, or service would qualify for handling by an irregular route common carrier of special commodities, without regard for the actual composition of the commodity. This attitude of the Commission acquired through its experience and expertise, and no doubt influenced by the practices in motor transport, impresses us as being entirely consistent with the spirit of the law and its objective —to render reliable service in response to the shipping needs of the public.
The need for the type service United furnishes is illustrated by the higher cost, sometimes as much as 500%, for single packages going regular routes. This high cost results from the minimum shipping requirements and other factors which prevent the common carrier over regular routes from picking up and delivering single packages at night, on Sundays, and at points beyond pickup and delivery limits of a regular route carrier. Overnight delivery is, of course, not feasible for the common carrier over regular routes.
Transway’s technical argument cannot stand alone. A basic tenet of any rational system of statutory interpretation requires courts to consider and carry out the pervading spirit of the law contained in policy expressions supporting its enactment. La. Civil Code art. 18. Public policy expressions relevant here are contained in Section 161 of Title 45 of the Revised Statutes. The statute declares that the business of operating (for hire) motor vehicles as common or contract carriers of persons or property for compensation upon the public highways and bridges of this State is a business affected with a public interest. Regulation of traffic by motor carriers is authorized by the legislature, among other reasons, “so the public will be given the benefit of the most economic and efficient means of transportation.” This policy is carried out by the certificate awarded to United, under which it will furnish a service no other carrier has offered to undertake — a service the need for which is amply demonstrated by the record.
Broad legislative delegation of plenary powers to the Commission are contained in Section 163 of Title 45: “The Commission has power and authority necessary to supervise, govern, regulate and control all motor carriers . . . The power, authority and duties of the commission shall include all matters connected with: the service to be rendered . ” (emphasis added). This power exists to enable the Commission to implement the public policy within reasonable limits of the guidelines established by the legislature. An expansive interpretation of this authority permits the result reached here.
In the context of this case we agree with the Commission and the trial judge that the certificate awarded to United properly falls within the class of common carrier of special commodities over irregular routes. As such the certificate was lawfully issued by the Commission.
For the reasons assigned, the judgment of the Nineteenth Judicial District Court is affirmed.

. “Louisiana Public Service Commission — Procedure Under the Louisiana Motor Carrier’s Regulatory Act (R.S. 45:161 et seq.) and under R.S. 45:178” (October 1959).
“Digest and Index of Regulation and Procedure — Por Hire Transportation by Motor Vehicle — Louisiana—With Quotations and References Relating to the Law, Decisions and Interpretations of the Louisiana Public Service Commission.” (October 1, I960).